IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN A. MARTIN,

    Plaintiff,                   No. CIV S-04-0756 LKK JFM P

    vs.

L. VILES, et al.,

    Defendants.           FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. In his amended complaint, filed August 30, 2004, plaintiff claims that defendants violated his constitutional rights by retaliating against him on several occasions. Plaintiff also claims that one defendant violated his constitutional rights by interfering with his right to access the courts. This matter is before the court on defendants' motion for summary judgment.

        SUMMARY JUDGMENT STANDARDS UNDER RULE 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.

/////

1

1         Under summary judgment practice, the moving party
always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes
demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56©, is satisfied." Id. at 323.

        If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56©. The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On December 15, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

ANALYSIS

I. Facts[1]

At all times relevant to this action, plaintiff was a state prisoner at California State Prison-Sacramento (CSP-Sacramento) and defendants were all state employees working at CSP-Sacramento. This action is proceeding on four claims in plaintiff's first amended complaint all arising from an incident on November 21, 2002 and events subsequent thereto.[2]

On November 21, 2002, plaintiff was given an order by correctional staff to change housing locations. Plaintiff went to the newly assigned cell as ordered. He found the cell "too dirty to move into" and went in search of cleaning supplies. (Plaintiff's Declaration in Opposition to Defendant's [sic] Renewed Notice of Motion and Motion for Summary Judgment, filed November 27, 2006, (Martin Declaration) at ¶ 42.) Thereafter, plaintiff and defendant Gauthreaux got into a dispute. Defendant Gauthreaux contends plaintiff refused to comply with several orders from defendant Gauthreaux to go into the cell. (Ex. A to Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment, filed October 16, 2006.) Plaintiff disputes this contention. (Martin Declaration, at ¶ 75.) Defendant Gauthreaux drew a can of pepper spray, and plaintiff submitted to handcuffs. (Defendants' Ex. A; Martin Declaration, at ¶¶ 75-78.)

Defendant Gauthreaux then escorted plaintiff out of the building to a holding cage. During the escort, plaintiff made a statement to defendant Gauthreaux. Plaintiff contends that he told defendant Gauthreaux "if he didn't learn his lesson the last time, he will in dealing with me, because I knows how to push the paperwork." (Martin Declaration at ¶ 85.) Defendant Gauthreaux contends plaintiff said, "You haven't learned from the last time yet!" and that

---

[1] Unless otherwise noted, the facts are undisputed.

[2] By order filed November 17, 2004, the court found the allegations in plaintiff's first claim for relief too vague and conclusory to state a cognizable claim for relief. (Order, filed November 17, 2004, at 2.)

4

defendant Gauthreaux interpreted that "as a reference to an incident in which he was assaulted by another inmate." (Defendants' Statement of Undisputed Facts at ¶ 4 and Ex. A thereto.)

Thereafter, based on the verbal exchange defendant Gauthreaux issued plaintiff a rules violation report charging plaintiff with threatening staff. (Defendants' Ex. A.) Defendant Matthews wrote a supplemental report in support of the charges. (Id.) In the supplemental report, defendant Matthews quoted plaintiff as saying to defendant Gauthreaux "I see you haven't learned your lesson yet," and stated that plaintiff's statement was taken by both defendant Matthews and defendant Gauthreaux as a reference to the prior assault on defendant Gauthreaux. (Id.) Due to the charges, on November 21, 2002, defendant Johnson ordered plaintiff placed in administrative segregation. (Defendants' Ex. C.) On November 22, 2002, defendant Lea reviewed and confirmed plaintiff's placement in administrative segregation. (Id.)

Plaintiff contends that on November 21, 2002, defendant Matthews confiscated all of plaintiff's legal material after plaintiff told him that he had a court-ordered deadline to file a second amended complaint in a pending federal lawsuit and before plaintiff received the notice of placement in administrative segregation. (Amended Complaint, filed August 30, 2004, at ¶ 12.) Defendant Matthews does not dispute that he took all of plaintiff's property. He contends, however, that he took the property pursuant to institutional regulations that govern the handling of an inmate's property upon placement in administrative segregation. (See Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, filed October 16, 2006, at 10; see also Defendants' Ex. O.)

On November 27, 2002, an institutional classification committee, comprised of defendants Lea, McKee, Mini, Ramos and Wheeler, released plaintiff from administrative segregation, reclassified his custody status as Close "B", confirmed his removal from the prison job he was in at the time of the November 21, 2002 incident, and placed plaintiff on a waiting list for a new job assignment. (Defendants. Ex. E.) During that meeting, plaintiff told committee members defendant Gauthreaux had assaulted him during the November 21, 2002 incident.

Defendant Lea told plaintiff she wanted his statements concerning the assault videotaped. A videotape was made on December 3, 2002.

On December 11, 2002, plaintiff filed an inmate grievance alleging that defendant Gauthreaux had assaulted him during the November 21, 2002 incident. (Martin Declaration, at ¶ 191.) On December 19, 2002, defendant Johnson ordered plaintiff placed back in administrative segregation. (Defendants' Ex. J.) On December 26, 2002, plaintiff was released from administrative segregation after appearance before an institutional classification committee comprised of defendants Chastain, Lea, Cade and Wheeler. (Defendants' Ex. M.) The committee continued plaintiff's Close "B" custody status, set his work group/privilege group at A2/B effective November 27, 2002, and placed him on the waiting list for a job assignment. (Id.)

On February 21, 2003, a hearing was held on the disciplinary charges issued by defendant Gauthreaux after the November 21, 2002 incident. (Defendants' Ex. A.) Following the hearing, the charges were dismissed "in the interest of justice." (Id.) The hearing officer found that the charges as documented in the report clearly showed "that there could have been a misconception as to what the inmate actually said" and that the rules violation report did not "substantiate the charge of Threatening Staff." (Id.)

On May 7, 2002, an investigative captain with the Investigative Services Unit at CSP-Sacramento issued a memorandum informing plaintiff that his allegations of assault by defendant Gauthreaux were "not sustained," which the memorandum defined as "the investigation failed to disclose sufficient evidence to clearly prove the allegation made in the complaint or to conclusively disprove such allegation." (Defendants' Ex. P.)

II. Plaintiff's Claims

   A. Retaliation

Plaintiff claims that the following actions by defendants were retaliatory: defendant Gauthreaux's issuance of the rules violation report; defendant Matthews' issuance of the supplemental report in support of the rules violation report and his confiscation of plaintiff's

legal materials; defendant Johnson's November 21, 2002 and December 19, 2002 orders placing plaintiff in administrative segregation; defendant Lea's review and approval of the placement; the actions taken by defendants McKee, Lea, Mini, Ramos and Wheeler on November 27, 2002, to increase plaintiff's custody status, decrease of his work status, and removal from his prison job; and the similar actions taken by defendants Chastain, Lea, Cade and Wheeler at the institutional classification meeting on December 26, 2002.

In order for a prison inmate to prevail on a retaliation claim, the inmate must show that he engaged in conduct protected by the First Amendment and that retaliation for that conduct was the "substantial" or "motivating" factor behind the defendant's conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). The inmate must also show an absence of legitimate correctional goals for the conduct he contends was retaliatory. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)). "In a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him some injury." Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977). A retaliation claim may be brought to remedy an alleged injury that would not rise to the level of a due process violation. See Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004); see also Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997).

    1. The November 21, 2002 Rules Violation Report and Supplemental Report

Defendants Gauthreaux and Matthews seek summary judgment on the ground that plaintiff had no constitutionally protected right to make the statement that he made to defendant Gauthreaux during the handcuffed escort. Defendants contend that prisoners are required by prison regulations to obey all laws and promptly and courteously comply with all orders, that it is a crime in California to utter a criminal threat and to attempt to obstruct a public officer in the performance of his duties by making a threat. Defendants contends that plaintiff's statement was
/////

a threat made in an attempt to obstruct defendant Gauthreaux in the performance of his duties and therefore is not protected by the First Amendment.

Three well-settled principles control disposition of this aspect of defendants' motion for summary judgment. First, an "inmate retains those First Amendment rights 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (1977). Second, an inmate has a constitutionally protected right to file prison grievances. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Third, prisons have a "valid interest in the operation of the prison through the insistence on respect, rather than through violent confrontation." Id. at 1281.

As noted above, there is a dispute between the parties over what plaintiff actually said to defendant Gauthreaux. Defendants Gauthreaux and Matthews have presented evidence that plaintiff said either "You haven't learned from the last time yet!" or "You haven't learned your lesson yet", and that both defendant Gauthreaux and defendant Matthews interpreted plaintiff's statement as a reference to a prior incident in which defendant Gauthreaux had been assaulted by another inmate, and therefore as a threat. In opposition, plaintiff has presented evidence that he told defendant Gauthreaux "if he didn't learn his lesson the last time, he will in dealing with me, because I knows how to push the paperwork." (Martin Declaration at ¶ 85.) The record also contains evidence that the hearing officer who adjudicated the disciplinary charges found unsubstantiated defendant Gauthreaux's charge that plaintiff's statement constituted a threat.

This dispute is material to resolution of plaintiff's retaliation claim against these two defendants and precludes summary judgment for both of them. It is for the jury to determine (1) what plaintiff actually said; and (2) whether plaintiff's statement was a reference to his intention to file a grievance and therefore protected by the First Amendment or whether it was a threat made by plaintiff in an attempt to interfere with defendant Gauthreaux's performance of

his correctional duties which defendant Gauthreaux had a legitimate penological interest in reporting as a rules violation.

For the foregoing reasons, defendants' motion for summary judgment should be denied as to the merits of plaintiff's retaliation claim against defendants Gauthreaux and Matthews.

2. <u>Defendants Johnson, Lea, McKee, Mini, Ramos and Wheeler – Actions taken between November 21, 2002 and November 27, 2002</u>

As noted above, defendants Johnson, Lea, McKee, Mini, Ramos and Wheeler all took various actions against plaintiff in connection with the processing of the rules violation report issued by defendant Gauthreaux. These defendants also predicate their request for summary judgment on the contention described in section IIA(1), <u>supra</u>, specifically, that plaintiff's statement to defendant Gauthreaux was not protected by the First Amendment and, therefore, that none of the actions taken thereafter constituted unlawful retaliation.

For the reasons set forth <u>supra</u>, there is a disputed issue of fact over whether plaintiff's statement was protected by the First Amendment. Defendants Johnson, Lea, McKee, Mini, Ramos and Wheeler have not, therefore, brought forth grounds on this motion that would entitle them to summary judgment on the merits of plaintiff's retaliation claim.

3. <u>Defendants Johnson, Chastain, Lea, Cade and Wheeler – Actions taken December 19 and 26, 2002</u>

Defendants Johnson, Chastain, Lea, Cade and Wheeler seek summary judgment on plaintiff's retaliation claim based on their actions in connection with his second placement in administrative segregation on December 19, 2002 on the grounds that the placement was not in retaliation for filing the grievance against defendant Gauthreaux but was based on legitimate penological interests in ensuring plaintiff's safety and protecting the integrity of their investigation into plaintiff's allegations that defendant Gauthreaux had used excessive force against plaintiff.

In his declaration, plaintiff states that on November 27, 2002, when he appeared before the institutional classification committee (ICC) in connection with his initial placement in administrative segregation he told the ICC members that defendant Gauthreaux had used excessive force against plaintiff on November 21, 2002. Plaintiff further states that during the hearing, defendant Lea told plaintiff that she wanted his statements videotaped. The undisputed evidence shows that defendant Lea ordered a videotaped interview of plaintiff in connection with the allegations of excessive force. The videotape was made on December 3, 2002. The ICC that met on November 27, 2002 released plaintiff from administrative segregation that day. (Defendants' Ex. E.)

On December 11, 2002, plaintiff filed a CDC 602 inmate grievance alleging that defendant Gauthreaux had assaulted him on November 21, 2002. On December 19, 2002, defendant Johnson ordered plaintiff placed in administrative segregation based on the allegations contained in the grievance. (See Defendants' Ex. J.) On December 26, 2002, defendants Chastain, Cade, Lea and Wheeler ordered plaintiff released from administrative segregation but continued plaintiff's Close "B" custody status, set his work group/privilege group at A2/B effective November 27, 2002, and placed him on the waiting list for a job assignment. (Defendants' Ex. M.)

After careful review of the record, this court finds that a triable issue of fact exists concerning whether defendant Johnson's decision to place plaintiff in administrative segregation on December 19, 2002 was in retaliation for plaintiff's grievance against defendant Gauthreaux or whether, as defendants assert, that order was made for plaintiff's safety and to preserve the integrity of the investigation into plaintiff's allegations. Specifically, there is evidence that plaintiff first raised the allegations of assault at an ICC meeting on November 27, 2002. That ICC meeting was convened to determine whether plaintiff should remain in administrative segregation following his placement there on November 21, 2002. Although they heard plaintiff's allegations of excessive force, the committee elected to release plaintiff from

administrative segregation. Plaintiff repeated the allegations on a videotaped interview on December 3, 2002, and no action was taken at that time to place him in administrative segregation. It was not until plaintiff's administrative grievance was received by correctional staff that defendant Johnson acted to return plaintiff to administrative segregation. Whether or not defendant Johnson's order was retaliatory must be decided by a jury.

The record does not support plaintiff's contention that the orders made by defendants Chastain, Cade, Lea and Wheeler at the December 26, 2002 ICC meeting were in retaliation for the grievance that he filed against defendant Gauthreaux. It is undisputed that these defendants released plaintiff from administrative segregation, and there is no evidence that the decisions they made with respect to his custody status, his work and privilege group, or his work status were in any way retaliatory. Defendants Chastain, Cade, Lea and Wheeler are entitled to summary judgment on this claim.

      B. Interference with Access to the Courts

Plaintiff's third claim for relief is that defendant Matthews interfered with plaintiff's constitutional right to access the courts by confiscating his legal materials.[3] Specifically, plaintiff claims that on November 21, 2002, after defendant Matthews was on notice that plaintiff had a legal deadline but before plaintiff received notice of his placement in administrative segregation, defendant Matthews confiscated all of plaintiff's legal materials. Plaintiff claims this confiscation caused him to miss a court-ordered deadline to file a second amended complaint in another case filed in this court, Martin v. Pliler, No. CIV S-02-1058 GEB JFM P.

/////

---

[3] Plaintiff also claims that confiscation of his legal materials was retaliatory. The undisputed evidence of record shows that defendant Matthews took the property, and all of plaintiff's other personal property, pursuant to plaintiff's placement in administrative segregation and there is no evidence to support plaintiff's assertion that defendant Matthews' reason for confiscating plaintiff's legal materials was related to plaintiff's litigation activity.

Defendant Matthews seeks summary judgment on this claim on the ground that his confiscation of plaintiff's legal materials was not the legal cause of any court deadline plaintiff missed. In support of this motion, defendant Matthews presents evidence that he took plaintiff's legal property and inventoried it for storage in the administrative segregation office, in accordance with institutional procedures. Defendant Matthews further presents evidence that he had no further control over plaintiff's property, and that the property was accessible to plaintiff by making a request to the administrative segregation property officer. Finally, defendants request that the court take judicial notice of the records in Martin v. Pliler, as the records in that case show plaintiff did not take steps in that action to seek relief from the alleged difficulties in accessing his legal property and that the case was ultimately dismissed without prejudice. Good cause appearing, defendants' request for judicial notice is granted. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

In Lewis v. Casey, 518 U.S. 343 (1996), the United States Supreme Court held that prison inmates have a constitutionally protected right to access the courts to bring civil rights actions to challenge their conditions of confinement and to bring challenges to their criminal convictions. Lewis v. Casey, 518 U.S. at 351. The right of access to the courts "guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. at 356. To prevent summary judgment for defendant Matthews, plaintiff must present evidence, sufficient to create a genuine issue of material fact, that defendant by his acts prevented him from bringing, or caused him to lose, an actionable claim of this type. Id.

The record in this action does not support plaintiff's claim that defendant Matthews violated plaintiff's constitutional right of court access. Even assuming arguendo that Matthews' confiscation of plaintiff's legal materials made it more difficult for plaintiff to access

/////

his legal materials[4]  The record in Martin v. Pliler shows that the action was dismissed without prejudice after plaintiff failed to meet December 6, 2002 deadline for filing a second amended complaint.  Plaintiff has made no showing that the dismissal of Martin v. Pliler without prejudice caused him to lose any actionable claim on the merits.  Defendant Matthews is entitled to summary judgment on this claim.

      C.  Qualified Immunity

Defendants' final argument is that they are entitled to qualified immunity from liability on plaintiff's claims.  State officials are "entitled to qualified immunity from § 1983 claims unless (1) their alleged conduct violated a constitutional right, and (2) that right was clearly established. . . .  In determining whether a right was clearly established, we do not consider the right as a "'general proposition.'" . . .  Rather, "'[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Edgerly v. City and County of San Francisco, __ F.3d __, 2007 WL 2034040, slip op. at 6 (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

For the reasons set forth above, defendants Chastain, Cade, Lea and Wheeler are entitled to summary judgment on the merits of plaintiff's retaliation claim against them, and defendant Matthews is entitled to summary judgment on the merits of plaintiff's claim that he violated plaintiff's constitutional right to access the courts.  For the reasons set forth supra, the conduct of these defendants did not violate plaintiff's constitutional rights and "there is no necessity for further inquiries concerning qualified immunity" as to these claims.  Saucier, at 201.

/////

---

[4] Plaintiff was in administrative segregation from November 21, 2002 to November 27, 2002.  In his declaration, plaintiff states that he made unsuccessful "attempts" to get his legal material back every day from November 27, 2002 to December 1, 2002, that on December 1, 2002 he submitted a request for an interview with defendant Matthews to get his property back, and that he finally received his property back on December 13, 2002. (Martin Declaration, at ¶¶ 168, 195, 196. )

As discussed above, there are disputed issues of material fact that preclude summary judgment for defendants Gauthreaux, Matthews and Johnson on plaintiff's claims that defendant Gauthreaux's act of writing the rules violation report was retaliatory, that defendant Matthews' act of writing the supplemental report was retaliatory, and that defendant Johnson's December 19, 2002 order placing plaintiff in administrative segregation was retaliatory. Where defendants' "entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." Wilkins v. City of Oakland, 350 F.3d 949. Summary judgment on these three claims depends on resolution of disputed issues of fact in favor of these three defendants. For that reason, these defendants are not entitled to qualified immunity from liability on those claims.

Although, for the reasons discussed in section IIA(1) supra, defendants Johnson, Lea, McKee, Mini, Ramos and Wheeler have not demonstrated their entitlement to summary judgment on the merits of the retaliation claims described in that section, the record does demonstrate they are entitled to qualified immunity from liability on those claims.

There is no evidence that any of these defendants acted with a retaliatory motive in the actions they took following issuance of the November 21, 2002 rules violation report charging plaintiff with threatening defendant Gauthreaux. In particular, there is no evidence that any of these defendants were present when the verbal exchange between plaintiff and defendant Gauthreaux occurred. Instead, the undisputed evidence shows that their actions were administrative steps taken in accordance with prison regulations following issuance of the November 21, 2002 rules violation report. Defendants Johnson, Lea, McKee, Mini, Ramos and Wheeler are all entitled to qualified immunity from liability for plaintiff's retaliation claims against them arising from plaintiff's November 21, 2002 placement in administrative segregation.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

/////

1. Defendants' October 16, 2006 renewed motion for summary judgment be granted with respect to all of plaintiff's claims except plaintiff's claims that defendant Gauthreaux retaliated against plaintiff by writing a rules violation report on November 21, 2002, that defendant Gauthreaux retaliated against plaintiff by writing a supplemental report in support of defendant Gauthreaux's November 21, 2002 rules violation report, and that defendant Johnson retaliated against plaintiff by ordering him placed in administrative segregation on December 19, 2002; and that defendants' motion be denied with respect to those three claims; and

2. This matter be referred back to the undersigned for further pretrial proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 14, 2007.

/s/
UNITED STATES MAGISTRATE JUDGE

12
mart0756.57